# EXHIBIT A

APRIL L. HOLLINGSWORTH (Bar No. 9391)
KATIE PANZER (Bar No. 16919)
**HOLLINGSWORTH LAW OFFICE, LLC**
1881 South 900 East
Salt Lake City, Utah 84105
Telephone: 801-415-9909
april@aprilhollingsworthlaw.com
katie@aprilhollingsworthlaw.com
Attorneys for Plaintiff

## IN THE THIRD JUDICIAL DISTRICT COURT
## OF SALT LAKE COUNTY, STATE OF UTAH

| | |
|---|---|
| **SARAH BARRAS,**<br><br>      Plaintiff,<br><br>vs.<br><br>**FAL FOODS USA, INC, a corporation; COCO JOY, LLC, a corporation; FAL FOOD & BEVERAGES, LLC, a corporation; and NOBLETREE COFFEE, INC., a corporation;**<br><br>      Defendants. | **COMPLAINT**<br>**(Jury Demand)**<br><br>Case No.<br><br>Judge |

COMES NOW, Plaintiff Sarah Barras, to complain and allege against Defendants FAL Foods USA, Inc. ("FAL Foods"), Coco Joy, LLC ("Coco Joy"), Nobletree Coffee, Inc. ("Nobletree"), and FAL Food & Beverages, LLC ("FAL F&B"), as follows:

### NATURE OF THE CASE

1. Ms. Barras is a former employee of FAL Foods, Coco Joy, Nobletree, and/or FAL F&B, and worked under the supervision of George during her employment there. During Ms. Barras' employment with Defendants, George subjected her to continual sexual harassment and sexual advances in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq*.

## PARTIES

2. Ms. Barras is an individual residing in Salt Lake County, Utah.

3. FAL Foods, Coco Joy, Nobletree, and FAL F&B are corporations doing business in Salt Lake County in the state of Utah and were Ms. Barras' employers during the relevant time periods.

## JURISDICTION & VENUE

4. The conduct at issue in this Complaint took place primarily in Salt Lake County, Utah.

5. This Court has jurisdiction over the parties and subject matter of this action pursuant to Utah Code Ann. § 78(B)-3-205.

6. Venue in this action is proper in this Court pursuant to Utah Code § 78(B)-3-307.

7. Ms. Barras filed a Complaint of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging discrimination based on gender. The EEOC issued a Right to Sue on September 30, 2019, attached as Exhibit 1. Ms. Barras has therefore met all administrative prerequisites for filing this Complaint.

## GENERAL FACTUAL ALLEGATIONS

8. Ms. Barras began working for Coco Joy as an administrative assistant in accounting in early September 2017.

9. Within two weeks of starting at Coco Joy, she was promoted to Director of Operations.

10. As Director of Operations, George became her immediate supervisor and she was required to work closely with him.

11. Ms. Barras was frequently required to travel with George to Coco Joy's New York offices.

12. For several months, Ms. Barras and George worked well together and Ms. Barras enjoyed her job.

13. In March of 2018, George's behavior towards Ms. Bearras became unprofessional.

14. George had never had or used social media but he began stalking Ms. Barras' social media accounts and asking her personal questions about the posts she made.

15. Later in March, Ms. Barras and George were in Park City on business and went to lunch together. During lunch, George told Ms. Barras that he was in love with her.

16. George also told Ms. Barras that she could go far with Coco Joy is she would "partner" with him, insinuating a quid pro quo arrangement.

17. Ms. Barras declined George's advances and informed him that she was happily married to her husband and did not reciprocate his feelings.

18. Despite Ms. Barras' rejection, George repeatedly attempted to hold her hand on the drive back down to Salt Lake City.

19. Around this same time, George began sending Ms. Barras frequent inappropriate and suggestive text messages. George would often text Ms. Barras that he missed her or was thinking of her.

20. On one occasion, George texted Ms. Barras and told her, "It's getting harder for me to hide my feelings for you from everyone we work with." The text went on to acknowledge that George knew that Ms. Barras did not reciprocate her feelings.

21. In another text, George told Ms. Barras, "I want to be as close as you want me and closer has always been better for me. Nothing makes me feel better than when we are together. I miss you as soon as we are apart and I think of you constantly all day … Honestly for me we can't be too close."

22. George would also regularly request that Ms. Barras send him pictures of herself. Ms. Barras ignored or declined these requests but George would frequently send her pictures of himself.

23. George's daughter, Beth Woodruff, was the IT specialist at Coco Joy. In March of 2018, Ms. Barras and Ms. Woodruff attended a conference together. At the conference, Ms. Woodruff verbally attacked Ms. Barras and told her she did not deserve her position with Coco Joy.

24. A few weeks after returning from the conference, Ms. Barras discovered that Ms. Woodruff was monitoring her emails—every email that she sent or received appeared in Ms. Woodruff's inbox.

25. Ms. Woodruff was only monitoring the emails of Ms. Barras and Alex Kavanaugh, a Coco Joy employee based in New York. Although the exact motive for this behavior is unknown, Ms. Barras believes that Ms. Woodruff was either jealous of the attention she received from George or she was monitoring her emails at the direction of George.

26. Ms. Barras and Mr. Kavanaugh were friendly and she believes her and Mr. Kavanaugh's emails may have been monitored because George was jealous of their relationship.

27. In June of 2018, Ms. Barras met George in New York to attend to business at the Coco Joy offices there. George asked Ms. Barras to have dinner with him. It was typical for the two to have business dinners together so Ms. Barras accepted the invitation.

28. At dinner, George requested that Ms. Barras order an alcoholic beverage. Ms. Barras declined but George continued to pressure her to order a drink.

29. Often after a work dinner, George and Ms. Barras would meet in their hotel lobby and debrief about their day.

30. However, this evening George invited Ms. Barras up to his room, under the guise of conducting their nightly debriefing. At first, George and Ms. Barras sat in the living area of his suite and discussed work.

31. George quickly steered the conversation to personal matters and again told Ms. Barras his feelings for her. Again, Ms. Barras rejected George's advances.

32. While George was telling Ms. Barras his romantic feelings for her, he began removing her shoes. Ms. Barras told George that this made her uncomfortable. George said that this was why he wanted her to have a drink at dinner, but if she was uncomfortable, she could sit on the bed on the other side of the room.

33. Assuming that George would stay seated on the couch, Ms. Barras sat on the bed. However, George did not remain on the couch. George laid on the bed next to Ms. Barras and began caressing her hair and kissing her forehead.

34. At first, Ms. Barras froze, not knowing how to handle George suddenly escalating unwanted sexual advances to physically touching her. After a few minutes, Ms. Barras got up and left George's room.

35. The next day, Ms. Barras and George got into an argument. Ms. Barras expressed her opinion that they were wasting their time and the company's money by traveling to New York so frequently, especially considering the lack of progress they seemed to be making.

36. Between the argument and George's unwanted advances the night before, Ms. Barras felt extremely uncomfortable with the situation. She called Coco Joy's travel agency to book her an early flight home.

37. However, Ms. Barras did not realize that George was required to authorize her travel. When George was informed Ms. Barras was attempting to leave New York early, he asked the travel agent to put him on the same flight home with her.

38. When Ms. Barras returned to Utah, she consulted her employee handbook to see who she should report sexual harassment to. The employee handbook, however, was silent on this point.

39. Not knowing who to turn to, Ms. Barras contacted Coco Joy's third-party HR company, Ampian HR. The Ampian representative she spoke to told her that she should report sexual harassment to George—the very man who was harassing her.

40. Despite George's pervasive and persistent sexual harassment, Ms. Barras continue working at Coco Joy because she otherwise loved her job.

41. On August 27, 2018, George terminated Ms. Barass's employment via text message. George told her that Coco Joy no longer had the funding to support her position.

42. Despite George's assertions that Coco Joy could not afford her, he contacted Ms. Barras several days later and asked her to come back and work for him. Ms. Barras declined the offer.

43. After her employment was terminated, Ms. Barras reached out to Susan Johnson, the former Director of Operations at Coco Joy. Ms. Johnson also worked under George's supervision and told Ms. Barras a very similar story of her employment at Coco Joy.

44. Ms. Johnson also experienced sexual harassment and unwanted advances at the hands of George. Ms. Johnson was only the Director of Operations at Coco Joy for a few short months but experienced consistent harassment over her time there.

45. On October 6, 2017, Ms. Johnson strongly rebuffed George's advances and shut him down. On October 9, 2017, the following Monday, George fired her.

46. After her termination, Ms. Johnson wrote a letter to Ampian HR, informing them of the sexual harassment she experienced. Therefore, Coco Joy was aware of George's previous behavior yet did nothing to prevent Ms. Barras from having a similar experience.

### FIRST CAUSE OF ACTION
**(Violation of Title VII, against all defendants)**

47. Ms. Barras incorporates herein the allegations of the foregoing paragraphs.

48. Under Title VII, Ms. Barras was entitled to a workplace free of sexual harassment.

49. As set forth above, Ms. Barras was subjected to sexual harassment by George.

50. Ms. Johnson had previously complained of sexual harassment by George. Therefore, Defendants knew or should have known about George's sexually harassing behavior but took no steps to prevent it.

51. Ms. Barras is entitled to recover damages for all their pecuniary losses created by Defendants' discrimination against her, as well as emotional distress, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary damages caused by Defendants' unlawful discrimination.

52. Ms. Barras is entitled to her attorneys' fees and costs of litigation.

### REQUEST FOR A JURY TRIAL

Plaintiff requests that this matter be tried before a jury.

### PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays for the following relief:

1. For the payment of back wages and benefits;
2. For reinstatement or front pay;

3. For compensatory damages;

4. For consequential damages;

5. For appropriate injunctive relief;

6. For all costs of litigation and attorneys' fees;

7. Pre-judgment and post-judgment interest at the highest lawful rate; and

8. For such other further and additional relief the Court deems just and proper.

Dated this 27th day of December, 2019

**HOLLINGSWORTH LAW OFFICE, LLC**

/s/ Katie Panzer
Katie Panzer
Attorneys for Plaintiff